(No. 22517.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BERT BURLEY, Plaintiff in Error.

*Opinion filed October 22, 1934.*

JOHN K. MURPHY, (EDWARD J. KELLEY, and LOUIS GREENBERG, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE ·DEYOUNG delivered the opinion of the court:

Bert Burley was indicted in the criminal court of Cook county for obtaining money from Merrill G. Gorton by means of the confidence game and by false pretenses. The defendant entered a plea of not guilty, waived a trial by jury, was found guilty of the former offense and was sentenced to the penitentiary. He prosecutes this writ of error.

On August 31, 1933, Bert Burley, the plaintiff in error, accompanied by David Eyre called upon Merrill G. Gorton, the proprietor of a restaurant at 209 West Randolph street, in the city of Chicago. The plaintiff in error had in his possession seven American Express Company money orders or traveler's checks, three for twenty, and four for ten, dollars each. Eyre requested Gorton, who was his brother-in-law, to cash the orders. Gorton assented, but since he was occupied at a steam table, he directed Eyre to obtain the money from Mrs. Gorton who acted as cashier. No further conversation was held with Gorton; he did not examine the orders, and neither the plaintiff in error nor Eyre indorsed them. Mrs. Gorton gave the plaintiff in error $100 in money in exchange for the orders. Thereafter, Gorton transmitted them, without indorsement, to certain creditors. On September 7, 1933, the orders reached the American Express Company, and payment was refused because the counter-signatures were not genuine. A special agent of the company interviewed the holders and ascertained that they had received the orders from Gorton. The latter was arrested and taken to the detective bureau. He communicated with Eyre who told the plaintiff in error that the money orders had involved Gorton in difficulty and

apprehension by the police. The plaintiff in error promised to reimburse Gorton and made an appointment to meet Eyre at the corner of Washington and Wells streets, in Chicago, for that purpose. He kept the appointment and delivered $100 in money to Eyre. Immediately following the transfer of the money, the plaintiff in error was arrested. Eyre gave the money to Gorton at the restaurant.

Bert Harpster, a resident of Beatrice, Nebraska, identified four of the money orders as among those he purchased on July 18, 1933, before he departed for Chicago. While in that city six days later, he discovered that these orders were missing, and he reported his loss to the police department. He testified that his signature appeared in the upper left-hand corner of each order, but that the signature in the lower left-hand corner purporting to be his own was not genuine.

David Eyre, it appeared, became acquainted with the plaintiff in error in the summer of 1932. On August 31, 1933, the latter inquired of Eyre over the telephone whether he could cash express money orders aggregating $100. Eyre answered that he could not, but that Gorton, his brother-in-law, might be able to do so. Later he met the plaintiff in error by appointment at Gorton's restaurant, took him to a steam table where the proprietor was employed and told him that the plaintiff in error was the man who had made the inquiry with respect to the money orders. Eyre stated on cross-examination that the plaintiff in error made no representations either to himself or to Gorton to obtain money on the orders.

Merrill G. Gorton testified that prior to the time the plaintiff in error and Eyre called at the restaurant on August 31, 1933, the latter had asked him whether he could cash some money orders for a friend; that he answered he could use them instead of money for the purpose of paying bills and that he cashed them on Eyre's recommendation. On cross-examination Gorton stated that he

had handled hundreds of money orders; that he did not indorse them upon negotiation since an indorsement was not required; that the plaintiff in error made no representation of any character when he obtained the money on the orders, and that he neither enlisted nor took advantage of the confidence of the witness.

The plaintiff in error is forty-two years of age and has been engaged in the drug business for twenty years. It appears from his testimony that on the afternoon of August 31, 1933, he stood in front of his store at Hyde Park boulevard and Lake Park avenue in Chicago to keep an appointment with Roscoe Burley, his brother; that Joe Martini, a real estate salesman, with whom he had been acquainted two years, approached; that in the conversation which ensued, the plaintiff in error remarked he was endeavoring to obtain money to remove his furniture from storage; that Martini offered to lend him $100 if he would re-pay the loan in two weeks; that the offer was accepted and Martini thereupon delivered to the plaintiff in error seven American Express Company money orders amounting to the sum stated; that the orders were signed and countersigned; that he did not affix his own or any other name to them and that he was first informed that the counter-signatures upon them were forged when Eyre called him by telephone on September 8, 1933. The plaintiff in error further testified that in the course of his business he had seen and cashed American Express Company money orders; that when he was acquainted with the persons presenting such orders he would often cash them without requiring counter-signatures in his presence; that the orders Martini offered appeared to be properly signed and he did not request him to endorse them; that at the time he received the orders the banks of the vicinity had ceased to do business and the orders could not be cashed elsewhere in the neighborhood. The meeting of the plaintiff in error and another person in front of the drug store was cor-

roborated by Roscoe Burley, the brother of the plaintiff in error.

The sole contention urged is that the evidence does not sustain the judgment. Section 98 of the Criminal Code (Cahill's Stat. 1933, p. 1015; Smith's Stat. 1933, p. 1037) declares that: "Every person who shall obtain or attempt to obtain from any other person·or persons any money, property or credit by means or by use of any false or bogus check or by any other means, instrument or device commonly called the confidence game shall be imprisoned in the penitentiary not less than one year nor more than ten years." The essence of the crime of obtaining money or property by means of the confidence game is a trust reposed in the swindler and betrayed by him as a means of obtaining the victim's money or property. The moving cause for the victim's parting with his money or property and giving it to the person accused must be the confidence reposed in the latter. (*People* v. *Sullivan,* 349 Ill. 509; *People* v. *Epstein,* 338 id. 631; *People* v. *Fosnacht,* 334 id. 351; *People* v. *Harrington,* 310 id. 613; *People* v. *Peers,* 307 id. 539; *People* v. *Rallo,* 293 id. 304). Any scheme whereby a swindler wins the confidence of his victim and cheats him out of his money by taking advantage of the confidence reposed in him is a confidence game. (*People* v. *Dore,* 339 Ill. 415; *People* v. *Epstein,* 338 id. 631; *People* v. *Visconte,* 326 id. 496; *People* v. *Rosenbaum,* 312 id. 330; *People* v. *Harrington,* 310 id. 613; *People* v. *Singer,* 288 id. 113; *People* v. *DePew,* 237 id. 574; *Juretich* v. *People,* 223 id. 484; *Maxwell* v. *People,* 158 id. 248). The criminal character of such a scheme is not lost because it assumes the form of a lawful business transaction. (*People* v. *Dore, supra; People* v. *Harrington, supra; People* v. *Poole,* 310 Ill. 345; *People* v. *Mutchler,* 309 id. 207; *People* v. *Shaw,* 300 id. 451). To justify a conviction for practicing the confidence game the proof must show that by the use of false representations or other

fraudulent means the accused person secured the confidence of the victim and as the result of such confidence obtained his money, property or credit. *People* v. *Parker,* 356 Ill. 138; *People* v. *Sullivan,* 349 id. 509; *People* v. *Snyder,* 327 id. 402; *People* v. *Santow,* 293 id. 430.

The plaintiff in error took the money orders with the signatures and counter-signatures upon them from a person with whom he had been acquainted for two years. The implied, if not the express, representation made to him was that all the signatures upon the orders were genuine; and there is no pretense that the plaintiff in error had any knowledge or information of any irregularity in the execution or negotiation of any of the orders. He converted them into money without his indorsement and without making any representation concerning them. The proprietor of the restaurant who cashed the orders testified that he did so upon the recommendation of Eyre, his brother-in-law, and that the plaintiff in error neither sought nor took advantage of his confidence. Promptly after difficulty respecting the orders had arisen, the plaintiff in error refunded to Gorton the money he had obtained from him. These facts and circumstances fail to disclose that the plaintiff in error intended to defraud Gorton. There was neither proof that the former obtained the latter's confidence nor that by taking advantage of the confidence reposed he swindled him out of his money. It follows that the essential elements of the crime charged are wanting.

To sustain the judgment, however, the prosecution has recourse to *Juretich* v. *People,* 223 Ill. 484, *People* v. *Dempsey,* 283 id. 342, and *People* v. *Shaw,* 300 id. 451. Joseph Juretich, the defendant in the case first cited, wrote a check for $19.30, payable to James St. Clair, signed the name of Charles T. Woods to it, and indorsed the name of the payee on the back. He gave the check to one Hawkins and directed him to take it to Max Goldenberg, a merchant, an acquaintance of Hawkins, pay $4 on an account amounting

to $19.30 which Juretich knew was owing to Goldenberg and obtain $15.30 in money. Hawkins presented the check to Goldenberg and he accepted it. The merchant credited the account with $4 and paid $15.30 in money to Hawkins, who gave Juretich $8.30 and retained $7. Juretich sought a reversal of the judgment of conviction on the ground that obtaining money by a fictitious check did not constitute practicing the confidence game. The court rejected the contention and affirmed the judgment. The defendant, it will be observed, forged both the signature and the indorsement. By falsely pretending to make a payment in reduction of an account, he obtained the confidence of Goldenberg, and by taking advantage of the confidence reposed in him, he swindled the merchant out of the money advanced.

The second case, *People* v. *Dempsey,* was a conviction for the same offense. Neil J. Greenberg, accompanied by another person, bought an overcoat and a hand-bag from the Appel Clothing Company, in Springfield, for $28. He presented a traveler's check for $50, payable to Henry Russell, issued by Thomas Cook & Sons, bankers. Greenberg represented himself to be Russell, the payee; he produced a letter of identification showing Russell's genuine signature, and he indorsed the payee's name on the back of the check in the presence of Appel, the proprietor. Appel accepted the check and gave Greenberg $22, the difference, in money. The check, with others, had been lost by Russell while aboard a ship bound from New Orleans to Havana, Cuba. When the particular check reached Thomas Cook & Sons in the course of collection, they refused to pay it because the indorsement was a forgery. The offense of practicing the confidence game was proved. Greenberg fraudulently represented that he was Russell, the payee of the check; he impersonated Russell in presenting the letter of identification and he forged the indorsement upon the check. By these means he obtained Appel's confidence and

he availed himself of that advantage to consummate his swindling operation.

A similar situation is presented by the third case, *People* v. *Shaw.* There a man entered the store of Charles R. Edinger, in Watseka, bought a pair of shoes for $5 and tendered an American Express Company money order for $50, payable to John Shaw. Edinger gave the man the shoes and $45 in money and the latter indorsed the order, "John Shaw." The order, it developed, was spurious and the express company refused to honor it. The defendant was convicted of practicing the confidence game and the judgment was affirmed. Manifestly, Edinger relied not only upon the instrument as genuine but also upon his belief that the defendant was the John Shaw to whom it was made payable. This belief was induced by the defendant's representation that he was the payee and by his act purporting to affix the latter's indorsement. The defendant first enlisted Edinger's confidence and then invoked it as the means of cheating him out of his money.

Each of the three cases relied upon by the prosecution shows that the defendant secured his ill-gotten gains by means of the confidence game. The accused person in each case obtained the confidence of his victim by fraudulent means and then obtained the latter's money through a betrayal of that confidence. Neither of these elements of the crime charged is disclosed by the evidence in this case. The absence of evidence tending to show that the plaintiff in error resorted to fraudulent means or representations to obtain Gorton's confidence or that he took advantage of his confidence and the undisputed testimony that Gorton parted with his money upon the recommendation of Eyre, his brother-in-law, leave the judgment rendered without a basis.

The judgment of the criminal court is reversed.

*Judgment reversed.*