(No. 34219.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DWIGHT SHELDON STEVENS, Plaintiff in Error.

*Opinion filed March 20, 1957.*

`Francis R. Wiley, and A. R. Ivens, both of Decatur, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and Hilmer Landholt and Lloyd F. Laterdresse, State's Attorneys, of Decatur, (Fred G. Leach, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Dwight Sheldon Stevens, a 56-year old optometrist, was indicted for the crime against nature as a result of sexual acts which he allegedly committed against the person of a 16-year old male patient, and at the jury trial which followed in the circuit court of Macon County on May 14, 1956, he was found guilty of this charge and was sentenced to the penitentiary for an indeterminate term of not less than one nor more than ten years. Writ of error has now been prosecuted to this court.

The crime is alleged to have been committed in the defendant's place of business which is located on the fourth floor of a Decatur office building and consists of a waiting room, visual training room, refracting room, and private office. The waiting room extends north and south and opens directly onto the building corridor across from the passenger elevators. There is no receptionist in the waiting room but a chime attached to the door rings when someone enters or leaves the office. Along the west wall of the waiting room and extending westerly is an office corridor which connects the waiting room with the other portions of the suite. The visual training room adjoins the waiting

room on the west and the refracting room on the east, and both rooms open onto the office corridor.

As is usual in cases of this nature, the evidence offered at the time of trial was highly conflicting. David Poole, the complaining witness, testified that he had been a patient of Dr. Stevens since 1952 and had visited his office on many occasions for visual treatment. He said that on February 20, 1956, the date of the alleged crime, he made an appointment to see the defendant at 4:30 P.M. but arrived soon after 3:00 o'clock. He described how two patients were in the suite when he entered, how they soon left and he was taken to the visual training room, how he received treatment in this room for approximately 1½ hours, how the door to this room was either locked or stuck during a portion of this time, how in one instance Dr. Stevens put his arm around the witness, and how he was thereafter directed to the refracting room. According to this witness, shortly after entering the refracting room the defendant put his arms around the patient, kissed him five or six times, and then proceeded to commit the sexual act. At that point, continued the witness, the waiting room chimes rang, prompting the defendant to terminate the sexual activities and the appointment. However, the witness stated that before he left, the defendant invited him to return the following Saturday for "more of the same."

This account was corroborated at least in part by J. E. Smith, a Decatur police officer. Over defense objections, he was allowed to testify that while in Springfield, Illinois, with the defendant on February 27, 1956, Dr. Stevens admitted that he had committed the acts with which he was later charged.

On the other hand, the defendant testified that the complaining witness arrived at his office at about 3:30 P.M. on the afternoon in question and was taken to the visual training room approximately 30 minutes later. He went on to tell of the training itself and of the fact that a girl from

a local optical company came into the training room at about 4:45 P.M. and that a Miss Stilley came into the waiting room just before 5:00 P.M. Shortly thereafter, according to the defendant, he took the boy to the refracting room for further visual testing, which lasted from 3 to 4 minutes, after which the complaining witness left the office. He admitted that upon one instance he partially closed the the training room door and turned out the lights so as to better view the boy's eye, but vehemently denied that he had ever put his arms around the boy, kissed him, or been guilty of any improper acts. As to the alleged verbal confession, he acknowledged that he had talked with the police officer while in Springfield but denied that he had ever confessed to any crime.

His story was also corroborated to a certain extent. W. H. Wiley, the office building manager, testified that he was familiar with the defendant's suite and that the doors to both the visual and refracting rooms could not be locked from the inside. Ada Rupp stated that she was the optical company messenger referred to by Dr. Stevens in his testimony and that she called at the defendant's office between 4:30 and 5:00 o'clock on the date of the alleged crime and saw a boy in the visual training room at that time. On cross-examination, however, this witness could not identify the boy and admitted that she did not remember that particular day. Bonnie Stilley, a defense witness, swore that she entered the defendant's waiting room just before 5:00 o'clock on the afternoon of February 20 and heard the door chimes ring at that time. She said that she took a seat in the waiting room just across from the office corridor and observed the defendant and the boy go from the visual training room to the refracting room where they stayed about four minutes. Immediately thereafter, according to this witness, the doctor and the boy came out of the refracting room, the doctor made an appointment with the boy, and the boy left. She noticed nothing unusual

at the time and swore that no one either entered or left the suite between the time she arrived and the time the boy left. On cross-examination it was developed that she could not identify the boy, that she talked to no one about the affair until the first week in May, but that she was then able to remember the exact details of that February visit. Several other persons also testified as to the defendant's good reputation in the community.

The points relied upon by defendant for reversal are (1) that the verdict is not supported by the evidence, (2) that the offense charged was not a crime against nature, (3) that improper evidence was admitted at the trial, and (4) that the lower court erred in giving and refusing certain instructions.

Where, as in the present case, the evidence is highly conflicting, it is for the jury to decide the outcome by evaluating the credibility of the individual witnesses, and when such a determination has been made, it will be disturbed by a reviewing court only if it is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People* v. *Brown,* 415 Ill. 23; *People* v. *Smith,* 404 Ill. 125; *People* v. *Quevreaux,* 407 Ill. 176; *People* v. *DeFrates,* 395 Ill. 439; *People* v. *Bakutis,* 377 Ill. 386.) Here, the complaining witness described in detail the manner in which the immoral acts were committed and a veteran police officer testified that the defendant verbally confessed to having committed such a crime. The defendant himself admitted that he knew the complaining witness, that he was alone with him on the date of the alleged crime, that he was in Springfield with J. E. Smith, and that while there he talked with the officer concerning this matter. Although the defendant offered witnesses to corroborate his account of the February 20th appointment, one of them admitted that she did not remember that day in particular; another said that she distinctly remembered minute details which had happened some 2½

months before; and none could positively say that the complaining witness was the boy they saw in the defendant's office. The jury and trial judge observed the witnesses and were in a much better position to judge their credibility than is a court of review. Upon these facts we cannot say that their determination was either unreasonable or unsupported by the evidence.

Next the defendant contends that the sexual acts with which he is charged did not constitute a crime against nature. Because of their disgusting character, we do not deem it necessary to detail the alleged facts upon which the charge is based but it is sufficient to say that they show the sexual act here committed was the same as was involved in *Honselman* v. *People*, 168 Ill. 172, and *Kelly* v. *People*, 192 Ill. 119. In both of these cases the argument which is now advanced by the present defendant was carefully considered by this court and held to be without merit. We can see no reason for now overturning a decision which has been tacitly approved by the legislature and courts of this State for many years and which we feel is just.

We must next consider whether improper evidence was admitted in this case. The defendant contends that since he was driven from Decatur to Springfield for the purpose of taking a lie detector test, and since any comment upon such a test would be improper, he was clothed with immunity from the time he left Decatur until he returned and no statements which he made during this trip could be used against him. This syllogism, although novel, is without logic. A person must be responsible for admissions and confessions which he has voluntarily made, and only where they have been acquired by trick, promises, or threats, will they be inadmissible. (*People* v. *Sloss*, 412 Ill. 61; *People* v. *Klyczek*, 307 Ill. 150.) In *People* v. *Sims*, 395 Ill. 69, we held that statements made by a 17-year-old girl while involuntarily strapped to lie detector apparatus were not admissible even though the machine was not actually operat-

ing at that instant. As can be seen, this holding has no application to the facts of the present case. Here there is no question but what Dr. Stevens voluntarily accompanied the officers to Springfield and made the incriminating statements in a restroom some distance from the place where the lie detector equipment was located. In fact, J. E. Smith was not even with the defendant when the tests were administered, and in his testimony he made no mention whatsoever of any such examination. We believe that this officer's account of the alleged confession was admissible.

The defendant further contends that the trial court erroneously allowed the prosecuting witness to testify as to complaints which he made shortly after the commission of the alleged crime. In support of this view, the defense has cited several decisions which hold that evidence of complaint is admissible only in rape cases and not in cases involving other sex crimes. (*People* v. *Scattura,* 238 Ill. 313; *People* v. *Romano,* 306 Ill. 502.) We have no quarrel with this rule of law except that it is not applicable to the present facts. Here the complaining witness was asked whether he had a conversation with anyone after he got home from the defendant's office. His answer was that he talked with his brother, called his mother, and then went to the police station. He did not say what was discussed in these conversations or whether any mention was made of the alleged crime, and no other person testified concerning such matters. Such does not constitute evidence of complaint. The rule allowing proof of complaint is an exception to the hearsay rule which permits third persons to testify concerning statements made by the prosecuting witness out of the defendant's presence. (*People* v. *Vaughn,* 390 Ill. 360; 15 I.L.P. Criminal Law, sec. 433.) Since no third person so testified in this case and since the statements made by the complaining witness related facts of which he had personal knowledge, no question of hearsay

was here presented. It may well be that such comments were irrelevant, but they were not of such a prejudicial nature as to warrant reversal upon these grounds.

Finally, the defendant argues that the lower court erred in giving and refusing various instructions. He first says that an instruction was given as to the penalty even though such was not within the scope of jury determination. This point was never raised in the lower court and will not now be considered upon review. (*People* v. *Wise*, 379 Ill. 11; *People* v. *Jackson*, 4 Ill.2d 296; *People* v. *Holt*, 398 Ill. 606.) The defendant next contends that certain of his special instructions as to prejudice and degree of proof were improperly refused. We have long held that a particular instruction need not contain all of the law upon the subject but that it is sufficient if the series of instructions, considered as a whole, fully and fairly announce the law applicable to the theories of the case, (*People* v. *Wilson*, 1 Ill.2d 178; *People* v. *Banks*, 7 Ill.2d 119; *People* v. *Casey*, 231 Ill. 261,) and that instructions which are argumentative or repetitious may properly be refused. (*Parsons* v. *People*, 218 Ill. 386; *People* v. *Bakutis*, 377 Ill. 386.) After carefully considering all the instructions which were submitted to the court, it is our opinion that the jury was accurately and fully instructed as to the law applicable to this case and that the defendant has no just cause for complaining about those instructions which were refused by the trial judge.

For the reasons stated, the judgment of the circuit court of Macon County is affirmed.

*Judgment affirmed.*