THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT REYNOLDS, Defendant-Appellant.

(No. 12885;

Fourth District—October 7, 1975.

Richard J. Wilson and Richard J. Geddes, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

A jury of the Circuit Court of Sangamon County returned verdicts finding defendant Robert Reynolds guilty of the offense of aggravated battery and not guilty of armed robbery. A mistrial was declared as to a charge of armed escape. He appeals from the conviction and the subsequently imposed sentence of 3 to 9 years' imprisonment. The aggravated battery was alleged to have occurred on November 23, 1973, and to have arisen out of the striking of one known by the defendant to be a peace officer engaged in the performance of his official duties all as prohibited by section 12—4(b)(6) of the Criminal Code, which provides that the offense is committed when:

"A person who, in committing a battery either:

Knows the individual harmed to be a peace officer, or a person summoned and directed by him, or a correctional officer, while such officer is engaged in the execution of any of his official duties including arrest or attempted arrest." Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(6).

Defendant admits that he hit James L. Campbell, a Sangamon County deputy sheriff, during an altercation that occurred while Campell was arresting the defendant pursuant to a warrant. The evidence is undisputed that the deputy suffered resultant bodily injury. Defendant contends that his action was a justified use of force in self-defense and that the trial court committed reversible error in refusing his tendered instruction on this point which stated:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force."

At the time of the occurrence, Campbell was in full uniform. He had been let into a house by a woman who told him that the defendant was not there. She had permitted the deputy to come in and look. Upon entering a room in the rear, Campbell noticed legs protruding from a closet and asked the person in the closet to come out. A man stepped out, and Campbell recognized him as the defendant Reynolds. The officer had the defendant put his hands on the wall and patted him for weapons, finding none. The evidence is disputed as to what happened during the next few minutes.

The deputy testified that he tried to put handcuffs on the defendant but defendant jerked his hands away. In the meantime Campbell had told defendant that he was arrested for conspiracy, and the defendant had continued to demand the nature of the charge. After the second try at handcuffing, the defendant lunged at Campbell's holster and shoved the officer into the corner in fighting for possession of the gun. The de-

fendant hollered for the woman who had let the deputy in to "get my thing." In the scuffle, Campbell kneed defendant in the groin, and then defendant struck Campbell in the face twice. The woman gave defendant a revolver which he then pointed at Campbell and made Campbell also give defendant his, Campbell's, gun. With revolvers in each hand, the defendant then hit the officer on the left side of the head. The officer fell to the floor and defendant left. On cross-examination, Campbell admitted that he had given a statement 3 hours after the occurrence which stated that he was reaching for his gun when defendant lunged at the holster and that defendant was either trying to stop Campbell from drawing his gun or was trying to take the gun from Campbell.

The defendant testified that Campbell threw his handcuffs at defendant's hands, apparently to make them open and lock. The cuffs hit the defendant's hand and the defendant pulled his hands back, and the officer put them up again. The defendant continued to ask what the warrants were for. The officer again tried to handcuff the defendant but the defendant put his hands back up again. The officer became angry and "pushed" the defendant back in the corner. As the officer pushed him, the officer said, "* * * Damn it, do as I say * * *." And the defendant reached out and grabbed him, turned him around and "threw" him against the wall. The officer then kneed the defendant in the groin. Reynolds proceeded to strike Campbell twice with his right hand. The officer reached for his weapon and flipped the strap on the holster as if he were going to draw it. The defendant reached over and put his hand over the officer's hands to prevent him from drawing the weapon. During this time the two men were still scuffling, and the officer was still kneeing Reynolds. The defendant succeeded in pulling the weapon out of its holster.

The defendant further testified that when he got the gun out of the holster, he did not have another gun in his hand. He received the second gun after he had secured the officer's weapon. The woman brought him the gun because the defendant asked for it. At the time the defendant was struck he did not have the gun. While in possession of both guns, Campbell reached for the defendant's left arm. The defendant struck the officer with his fist but with the gun in his hand. The defendant stated that he did not intend to hit Campbell with the gun.

The instruction on justifiable use of force tendered by defendant is a statement taken from section 7—1 of the Criminal Code which states:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use

of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1973, ch. 38, par. 7—1.)

A defendant is entitled to an instruction on the theory of justifiable use of force if evidence is introduced from which the jury could find each of the necessary elements of the affirmative defense. (*People v. Stombaugh*, 52 Ill.2d 130, 284 N.E.2d 640). The defendant and Deputy Campbell were the only occurrence witnesses to testify. The testimony of Campbell was clearly insufficient to set forth any grounds to justify the force used by the defendant. The question to be decided is, therefore, whether the testimony of the defendant together with the reasonable inferences to be drawn from it was such that, if believed by the jury, it would be sufficient to justify the force used by the defendant. The importance of this determination is obvious because the evidence is undisputed as to all of the other elements of the case, namely that the defendant intentionally hit the officer knowing him to be a peace officer making an arrest and caused him to suffer bodily harm.

The law concerning the use of force by an officer making an arrest and by the person being arrested each against the other is complicated. It arises out of sections 7—1, 7—4, 7—5 and 7—7 of the Criminal Code. Section 7—4 states in part:

"Use of Force by Aggressor.] The justification described in the preceding Sections of this Article is not available to a person who:

\* \* \*

(c) Otherwise initially provokes the use of force against himself, unless:

(1) Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant." (Ill. Rev. Stat. 1973, ch. 38, par. 7—4.)

Section 7—5 states in part:

"Peace Officer's Use of Force in Making Arrest.] (a) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from

bodily harm while making the arrest." (Ill. Rev. Stat. 1973, ch. 38, par. 7—5.)

Section 7—7 states:

> "Private Person's Use of Force in Resisting Arrest.] (a) A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." (Ill. Rev. Stat. 1973, ch. 38, par. 7—7.)

The Committee Comments to section 7—7 (Ill. Ann. Stat., ch. 38, par. 7—7 (Smith-Hurd 1972)) indicate that the prohibition against the use of force to resist an unlawful arrest is contrary to rulings in prior cases and the statements of text writers. The Comments state, "The public interest in discouraging violence and insisting upon the use of peaceful methods of obtaining release from unlawful arrest clearly outweighs the recognition of the feeling of the individual." The Comments further note, however, that the section does not apply to the situation in which the officer uses excessive force. As to this, the Comments state, "the officer's use of excessive force invokes the right of self-defense stated in Section 7—1." A similar statement appears in the Comments to section 7—5. Such was also the rule prior to the adoption of the Criminal Code in 1961. *People v. Doody*, 343 Ill. 194, 175 N.E. 438.

The defendant testified that the deputy hurt him when the deputy attempted to handcuff him and that the deputy then "pushed" him to the wall. By the defendant's own admission his movement of his wrists prevented the deputy from applying the handcuffs. Defendant testified that when he threw the officer against the wall he said, "I don't have to take this in my own home," thus indicating that the conduct of the officer was insulting rather than that he feared for his own safety. Considering the stated purpose of the Criminal Code to discourage escalations of the intensity of confrontations between those making arrests and those being arrested and that the injury from the pushing was at most an injury to the defendant's feeling, we rule that this testimony, if believed, would be insufficient as a matter of law to justify the defendant when he admittedly "threw" the officer against the wall. To rule otherwise would encourage those being arrested to react violently to the slightest bodily contact by a police officer in making an arrest.

■■ The act of the defendant in throwing the deputy against the wall and each subsequent act of the defendant was such resistance to arrest as to justify by the terms of section 7—5 the officer's kneeing the defendant in the groin and each subsequent counter use or threat of force by the officer. By throwing the deputy against the wall, the defendant

became the aggressor. By the terms of section 7—4, the affirmative defense of section 7—1 was unavailable to defendant to justify any of his subsequent acts including his striking of the deputy with a fist holding a gun. Taking the evidence most favorable to the defendant, at no time did Deputy Campbell ever give any indication that he was attempting to do anything other than to have defendant submit to being handcuffed and to protect himself from the actions of defendant, and the defendant had no reasonable grounds to believe otherwise. At the most, the deputy was rough in applying the handcuffs. The refusal to give the instruction was not error.

Defendant also complains of the giving over his objection of an instruction which did not contain a statement that the prosecution must prove that the act giving rise to the battery was done "knowingly or intentionally." The court did give I.P.I. Criminal Instructions 11.05 and 11.09, which taken together define the offense of aggravated battery and include a statement that the bodily harm must be knowingly or intentionally caused. In *People v. Truelock*, 35 Ill.2d 189, 220 N.E.2d 187, an instruction defining the offense omitted the essential element that the act be done knowingly. The court held, however, that the erroneous instruction did not require reversal because of the clear and convincing proof of defendant's guilt. (See also *People v. Ward*, 32 Ill.2d 253, 204 N.E.2d 741, and *People v. Davis*, 10 Ill.2d 430, 140 N.E.2d 675.) Here the thrust of defendant's defense is that his acts were justified. We have ruled that the evidence on that point was insufficient to submit that question to the jury. Defendant admits that he intended to hit Deputy Campbell with a fist which held a revolver.

The prosecution also contends that the accuracy of the instructions defining the offense cured any insufficiency in the issues instruction citing *People v. Stevens*, 11 Ill.2d 21, 141 N.E.2d 33, and *People v. Juve*, 106 Ill.App.2d 421, 245 N.E.2d 293. These and other cases have held that the instructions are to be considered together and that if the instructions are accurate as a whole, the giving of an incomplete instruction is not reversible error. We are not aware, however, of a case where this rule has been applied to cure an insufficient issues instruction. The jury is not properly instructed in a criminal case when the issues instruction does not require the jury to find that the prosecution has proved beyond a reasonable doubt every material element of the offense. The elements may be defined or explained by other instructions.

■■ We consider the accuracy and the completeness of the issues instruction to be important. In the case under consideration, however, since the element missing from the instruction was admitted by the defendant, since the proof of guilt was clear, and since the instructions

taken together advised the jury of all the elements of the offense no reversible error occurred.

 This court has previously held in *People v. Bratcher*, 29 Ill.App.3d 202, 330 N.E.2d 297, that the sentence to be imposed upon a conviction for aggravated battery as defined by section 12—4(b) of the Criminal Code is determined by subparagraph (9) thereof rather than section 12—4(d). Subparagraph (9) provides for a penitentiary sentence of 1 to 5 years. The sentence here imposed of 3 to 9 years was in excess of that permitted.

The judgment of conviction is affirmed, the sentence vacated and the case is remanded to the Circuit Court of Sangamon County for the imposition of sentence as explained in this opinion.

Conviction affirmed, sentence vacated and cause remanded.

TRAPP, P. J., and CRAVEN, J., concur.