THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTONIO PAYTON, Defendant-Appellant.

Fifth District No. 82—734

Opinion filed March 2, 1984.

Randy E. Blue, of State Appellate Defender's Office, of Mt. Vernon, and Michael A. Lynch, law student, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Stephen E. Norris and Mary W. Richardson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Jackson County, Antonio Payton, defendant, was convicted of residential burglary and theft. Defendant was sentenced to 12 years' imprisonment on the former count; no sentence was imposed on the latter. On appeal, defendant contends that (1) evidence of his confession to the crimes was improperly admitted at the trial, in that the confession was involuntary; (2) alternatively, the inculpatory statements made by defendant were the product of an improper arrest and should not have been admitted at trial; and (3) the court erred in failing to instruct the jury on the offense of burglary. For the reasons which follow, we reverse defendant's convictions and remand this cause for a new trial.

Prior to trial, defendant filed a motion to suppress his confession to the crimes, alleging, among other things, that the confession was involuntary in that it resulted from "mental coercion" of the defendant by police detective Don Strom. At an October 13, 1982, hearing on the motion, Detective Strom testified that he went to defendant's residence on July 26, 1982, in order to talk with defendant regarding the burglary of a home located at 622 North Almond in Carbondale. After entering defendant's house, Strom told defendant that he would like defendant to come down to the police department to talk with him. When defendant indicated that he would rather not go to the police station with Strom, Strom indicated that he could talk to defendant's parole officer rather than to defendant. At this point, according to Strom, defendant agreed to go to the police station, and subsequently rode with Strom to that destination. Strom testified that defendant rode in the front seat of the car, was not handcuffed, had not been arrested, and had not been advised of his constitutional rights at that time.

Following their arrival at the police station, Strom advised defendant of his constitutional rights. According to Strom, defendant did not appear to be intoxicated, in a drugged condition, or in need of medical attention while at the station. During his subsequent conversation with defendant, Detective Strom, by his own admission, falsely told defendant both that he had been positively identified by the vic-

tim of the burglary and that his fingerprints had been found at the scene of the crime. Defendant subsequently admitted to Strom that he had committed the offense. Strom testified that, following these statements, defendant indicated that he had a drinking problem. Strom informed defendant that he would put that information in his police report, and that the court would order counseling for defendant if it was deemed appropriate. Strom indicated that, after the interview at the station, he drove defendant to North Almond Street, where defendant pointed out the home which had been burglarized. Strom testified that he then gave defendant a ride home and released him, in order to give defendant an opportunity to retrieve the coins which had been taken in the burglary.

Defendant testified on his own behalf at the hearing, and indicated that it was his understanding that he had to go with Detective Strom when Strom came to his house. Defendant stated that he did not sign the *Miranda* warnings until after he admitted committing the burglary, and that, prior to the time of his confession, Strom informed him that he would be arrested if he didn't make a statement, but that Strom would let him go if he did. Defendant further testified that he was trying to "cut a deal" by cooperating with Strom, and that he discussed his drinking problem with Strom at the end of the interview. Following defendant's testimony, the court denied the motion to suppress.

At trial, Debra Dayton testified that, early in the morning of July 22, 1982, she returned to her home at 622 North Almond in Carbondale to find one of her window screens lying on the ground near the house. Upon looking into the house through the window, Ms. Dayton saw a man standing in her bedroom and looking through her chest of drawers. Ms. Dayton testified that she then awakened a neighbor, asked him to call the police, and waited on the neighbor's porch for the police to come. Just as a police officer was arriving, according to Ms. Dayton, the man ran out of the house and down the street, and the officer was unable to apprehend him. Ms. Dayton described the burglar as a black male with a "messy" Afro hairstyle, and indicated that he was wearing a blue long-sleeved sweat shirt that appeared to have the number "21" on the front of it. After viewing a photographic lineup containing five pictures, including one of defendant, Ms. Dayton indicated that a photograph of another man most closely resembled the burglar.

Detective Strom also testified for the State at trial, and indicated that he decided to interview defendant because he had seen defendant wearing a shirt "identical" to that noted by Ms. Dayton in her de-

scription of the burglar. The remainder of Strom's testimony was similar to that which he had given at the hearing on the motion to suppress. During the interview at the Carbondale police station, according to Strom, defendant admitted taking the coins from the Dayton residence. Later in the day on which the interview was conducted, defendant's mother turned the shirt with the number "21" on it over to Strom.

Defendant did not testify at trial, and the jury returned a verdict of guilty on both counts. Defendant's timely post-trial motion was denied, and he was sentenced to 12 years' imprisonment on the residential burglary conviction.

On appeal, defendant initially argues that the tactics used by Detective Strom were such as to render defendant's confession involuntary, and that the confession should have been suppressed. We agree. In determining whether a confession was voluntarily made, it must be ascertained whether the defendant's will was overborne at the time he confessed or whether the confession was made freely, voluntarily and without compulsion or inducement of any sort. (*People v. Noe* (1980), 86 Ill. App. 3d 762, 764-65, 408 N.E.2d 483.) Such a determination must be made upon consideration of the totality of the circumstances attendant to the confession, and the confession is admissible if its voluntariness is established by a preponderance of the evidence. (86 Ill. App. 3d 762, 765.) The finding of a trial court that a confession is voluntary will not be disturbed unless that finding is contrary to the manifest weight of the evidence. *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 769, 336 N.E.2d 50.

Viewing the circumstances of defendant's confession here in their entirety, we are compelled to conclude that the trial court's finding of voluntariness was contrary to the manifest weight of the evidence. It is undisputed that, prior to the time defendant made his confession, Detective Strom falsely told him that he had been identified by the victim of the crime, and that his fingerprints had been found at the scene. The United States Supreme Court has unequivocally stated that "any evidence that the accused was threatened, tricked, or cajoled into a waiver [of the fifth amendment privilege against self-incrimination] will, of course, show that the defendant did not voluntarily waive his privilege." (*Miranda v. Arizona* (1966), 384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.) Moreover, the Illinois Supreme Court has long recognized that confessions or admissions acquired by trick are inadmissible. (*People v. Stevens* (1957), 11 Ill. 2d 21, 27, 141 N.E.2d 33.) While the State argues that Detective Strom's deceptions were "not likely to produce an untrustworthy con-

fession," we believe that the nature of those deceptions belies such an assertion. It seems apparent that a suspect grossly and intentionally misled as to the amount and strength of the evidence against him may well be induced to confess as a direct result of those misrepresentations. Defendant here testified that he was trying to "cut himself a deal" by admitting his involvement in the crime, and we think it ignores reality to presume that neither the reliability nor the voluntariness of a confession is tainted by police conduct calculated to falsely persuade the defendant that his prospects for avoiding conviction are nearly hopeless. While the State calls our attention to cases in which false police representations concerning fingerprints have been held not to render a confession involuntary (*People v. Boerckel* (1979), 68 Ill. App. 3d 103, 385 N.E.2d 815; *People v. Pritchett* (1974), 23 Ill. App. 3d 368, 319 N.E.2d 101 (abstract of opinion)), we do not believe that the trickery employed in those cases approaches that used here, where defendant was told not only that his fingerprints were found at the scene, but that he had been positively identified as the burglar. Finally, it matters not that defendant's confession here may have been true, for the truth or falsity of the confession is irrelevant insofar as the inquiry into its voluntariness is concerned. (*Jackson v. Denno* (1964), 378 U.S. 368, 377, 12 L. Ed. 2d 908, 915-16, 84 S. Ct. 1774, 1781.) Given the nature and extent of the trickery employed by Detective Strom, we conclude that the trial court's finding that defendant's confession was voluntary was contrary to the manifest weight of the evidence presented at the hearing on the motion to suppress.

For the foregoing reasons, defendant's convictions are reversed, and this cause is remanded to the circuit court of Jackson County for a new trial at which defendant's confession to Detective Strom shall not be used. In view of our disposition of this cause, we need not address the remaining issues presented by defendant.

Reversed and remanded.

WELCH, P.J., and JONES, J., concur.