THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GABRIEL SIFUENTES, Defendant-Appellant.

First District (2nd Division)   No. 1—90—2200

Opinion filed June 15, 1993.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Christopher Daddino, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Following a bench trial, defendant was convicted of aggravated arson and sentenced to 16 years' imprisonment. Defendant appeals his conviction contending that the State did not present sufficient competent evidence to prove him guilty beyond a reasonable doubt. We reverse and remand because the trial court relied on an expert's opinion, where the expert's testimony showed that he had no proper basis for that opinion.

During the early evening hours of May 1, 1988, defendant's brother, Jesus Sifuentes, returned to the home he shared with defendant and 21 other family members, including 14 children. Jesus found defendant had a broken and bloody nose. When defendant refused to seek medical attention, Jesus told him to take a bath. Defendant went to the basement apartment where he lived with his wife and children. Defendant came back upstairs to the kitchen and asked his wife to come downstairs with him. When she refused, defendant began arguing with Jesus' wife. Jesus told defendant to go downstairs and go to sleep. Jesus locked the interior door between the basement stairs and the kitchen after defendant left. Shortly thereafter, defendant pounded on the kitchen door, asking Jesus to let him in. Jesus told defendant that he was going to call the police, and, before returning to the basement, defendant replied, "if that is what you want, that's all right with me."

Several minutes later, Jesus heard one of the smoke detectors in the house sound, and when he went to open the interior basement door, he could not do so because of the flames in the basement. Jesus ordered everyone to leave the house.

Defendant's teenage nephew, Jesus Sifuentes, Jr., was playing basketball in the alley that evening when he saw defendant exit the exterior basement door and walk quickly down the alley. Less than a minute later, his aunt yelled that a fire had started, and he saw flames in the basement. He followed defendant down the alley.

Hugo Sifuentes, another of defendant's brothers, saw defendant leave the house from the basement door shortly before the smoke detector sounded. Hugo left the house and went after Jesus Jr., who was following defendant.

Around 10 p.m. that evening, police officer Wayne Micek went to the Sifuentes' house to investigate the fire. The next day, Micek picked up defendant and brought him to the police station for questioning regarding the fire. Micek asked for the assistance of a Spanish interpreter. Officer Jose Cartagena read defendant his *Miranda* rights, translating them into Spanish. Defendant agreed to answer questions about the events of the day before. Cartagena spoke to defendant for a total of about 10 minutes, and then he told Micek that defendant admitted that he started the fire by using his cigarette lighter to light a pair of pants in his closet.

Prior to the bench trial, defendant moved to suppress his statement. The trial court granted the motion, finding that the State did not meet its burden of proving that defendant, who left school after the first grade when he lived in Mexico, understood his constitutional rights.

At trial, defendant stipulated that Micek was an expert in arson investigation. Based on the burn pattern on the boards used in constructing the closet, Micek determined that the fire started in a clothes closet in the basement. He found no energy sources in the closet, so he ruled out an electrical cause for the fire. He found no accelerants. In his opinion, the fire was intentionally set by an offender who used a cigarette lighter to light a pair of pants in the closet.

On cross-examination, Micek admitted that a photograph which he took as part of his investigation of the fire apparently showed a wire hanging from the top of the closet. He could not say whether the object was an electrical wire. He admitted that he did not find a cigarette lighter during his investigation. Micek testified that he used defendant's statement in determining that the fire was intentionally set.

John Campbell, another expert in arson investigation, testified for defendant that he reviewed the written reports and photographs relevant to defendant's case, and he found that these materials were not sufficient to support an opinion concerning whether the fire was set intentionally. He could not definitely state where the fire originated, but the burn pattern was "consistent with the fire starting adjacent to the closet, in a wall behind the closet or in an upper part of the closet." He could not rule out an electrical cause for the fire based on the information in the police reports and photographs.

The court accepted Micek's opinion as to the cause of the fire. On that basis, together with the testimony of defendant's family, the trial

court found defendant guilty of aggravated arson and sentenced him to 16 years' imprisonment.

■ Here, the trial court found that the State did not meet its burden of proving that defendant knowingly waived his constitutional rights and voluntarily confessed. (See *People v. Payton* (1984), 122 Ill. App. 3d 1030, 1033, 462 N.E.2d 543.) Thus, this court must presume that the police obtained the confession in violation of defendant's constitutional rights. When police obtain evidence in violation of a defendant's constitutional rights, that evidence is not admissible against the defendant. (*Wong Sun v. United States* (1963), 371 U.S. 471, 484, 9 L. Ed. 2d 441, 453, 83 S. Ct. 407, 415.) "The exclusionary prohibition extends as well to the indirect as the direct products" of the constitutional violation. *Wong Sun*, 371 U.S. at 484, 9 L. Ed. 2d at 453, 83 S. Ct. at 416.

■ The State's expert admitted that he used defendant's inadmissible confession in reaching his conclusion that the fire was intentionally set. Under Federal Rule of Evidence 703, the trial court may permit an expert to state his opinion if the information which forms the basis for the opinion is the kind of information upon which experts in the field rely, even if the information itself is not admissible in evidence. Our supreme court adopted this Federal rule in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 193-95, 417 N.E.2d 1322.

The United States Court of Appeals for the Fifth Circuit explained the rule in *Barrel of Fun, Inc. v. State Farm Fire & Casualty Co.* (5th Cir. 1984), 739 F.2d 1028, 1033:

"[U]nder Rule 703, expert testimony may not be excluded merely because it is based on facts or data that are inadmissible in evidence. However, the Rule does not guarantee the admissibility of all expert testimony that meets its criteria if such testimony runs afoul of other evidentiary requirements. For instance, expert testimony otherwise admissible under Rules 702 and 703 may still be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...' Fed. R. Evid. 403."

In *Barrel of Fun*, the plaintiff sued its fire insurer to recover for fire losses and the insurer answered that plaintiff's agent set the fire. The trial court excluded testimony that the plaintiff's officer's psychological stress evaluation (PSE) indicated that the officer had prior knowledge of and authorized the setting of the fire. However, the trial court permitted defendant's fire investigation expert to testify that in his opinion, based partially upon the PSE, the officer had prior knowledge and authorized the setting of the fire. (*Barrel of Fun*, 739

F.2d at 1030.) The appellate court reversed the judgment for defendant, holding: "Because *** PSE evidence, whether in the form of raw data or expert opinion interpreting or extrapolating upon that data, is inherently suspect, Rule 703 cannot, standing alone, provide an avenue for its admission." (*Barrel of Fun*, 739 F.2d at 1033.) The court remanded for reconsideration "without reliance upon [the fire investigator's] testimony insofar as it was based upon the results of [the officer's] PSE." *Barrel of Fun*, 739 F.2d at 1034.

Similarly, interpreting Rule 703 in a criminal case, the United States Court of Appeals for the Seventh Circuit held:

> "An arson expert cannot testify that he heard from an informant that the defendant torched the building and that thus in his expert opinion the defendant probably set the fire. *** District courts must ensure that expert opinion testimony is in fact expert opinion, not merely opinion given by an expert." (*United States v. Lundy* (7th Cir. 1987), 809 F.2d 392, 395-96.)

The appellate court in that case affirmed the conviction for arson because the investigator's opinion was "based heavily on his own investigation, which ruled out most accidental causes and suggested that an accelerant had been used. [He] never testified that Lundy or anyone in particular caused the fire." *Lundy*, 809 F.2d at 396.

In this case, Micek testified that the fire started when the offender used a cigarette lighter to ignite a pair of pants in defendant's closet. He pointed to no physical evidence to support his conclusion that the offender used a cigarette lighter or lit pants. Micek ruled out electrical causes for the fire because he found no power sources in the closet, but he admitted that the picture he took of the fire-damaged closet apparently showed a wire hanging in the closet. He could not say with certainty what the object was, but he admitted it could have been an electrical wire. Micek found no accelerants at the fire scene. Defendant's expert, who considered primarily the physical evidence without taking defendant's statements into account, testified that the evidence could not support a conclusion that the fire was deliberately set. Micek admitted that he relied in part on defendant's confession in reaching his conclusion that the fire was intentionally set.

■ Micek not only considered the inadmissible confession, from this record we conclude that without the confession Micek did not have adequate support for his opinion that an offender intentionally set this fire. On cross-examination, Micek virtually admitted this, as he acknowledged that based solely on the way the fire started, he could not rule out accidental causes. In effect, Micek testified that he heard from defendant that defendant torched the building, and thus in

his expert opinion defendant probably set the fire. Rule 703, applicable here under *Wilson* (84 Ill. 2d at 195), does not permit this sort of testimony. (*Lundy*, 809 F.2d at 395.) The State cannot use Rule 703 to bring into evidence the inadmissible confession to prove the truth of the confession. (*People v. Anderson* (1986), 113 Ill. 2d 1, 11-12, 495 N.E.2d 485.) Since that is essentially what Micek's testimony did, we hold that Micek's expert opinion that the fire was intentionally set by an offender is inadmissible into evidence.

We believe that the evidence properly admitted is sufficient to present a question of fact concerning defendant's guilt. Therefore, we reverse and remand for a new trial.

Reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.