THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ODELL HOUSTON *et al.*, Defendants-Appellants.

First District (5th Division) No. 60985

Opinion filed February 27, 1976.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendants Odell Houston, John Gibson and Tyrone Hall were indicted for armed robbery in violation of section 18—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). Each defendant moved to have his arrest quashed, and all evidence procured as a result of that arrest, including their confessions, suppressed. As defendants chose to waive their right to a jury, the hearing on these motions was held together with the trial. At the conclusion of the trial, the motions were denied, and all defendants were found guilty. Defendant Gibson was sentenced to a term of four to six years; defendant Hall was sentenced to a term of five to eight years; and defendant Houston was sentenced to a term of from eight to 24 years. On appeal each defendant contends that the court erred in not suppressing his confession, and additionally Houston contends that the severity of his sentence was based on the improper reliance by the court on an allegation regarding his commission of another crime.

On August 28, 1972, at approximately 10:30 p.m., two gunmen robbed the LaGrange News Agency located in a suburb of Chicago. The cashier, Vera Nikola, was able to give a description of the robbers to investigating officers but was unable to positively identify them. As the two robbers fled, a passerby, Harold Dingus, observed the automobile which they entered and marked down the license number. A third man acted as the driver of the car. Dingus was unable to identify any of the men. He described the car as a white 1970 LeMans. Dingus gave the license number and automobile description to Ms. Nikola who passed this information on to officers of the LaGrange Police Department.

Officers Konzak and Clark of the LaGrange police were assigned to the case. They immediately made a vehicle registration check on the license number and found that it "checked out" to Beverly Gilbert of LaGrange. Clark went to Ms. Gilbert's home and informed her that a vehicle bearing her license plate had been involved in a a hit and run accident. She stated that she no longer owned a car and had given the plates to her boyfriend, John Gibson, for use on his beige 1970 Cutlass. She gave Clark a description of Gibson and his Chicago address.

Clark and Konzak informed the Chicago Police Department of the robbery and their conversation with Ms. Gilbert. Acting on this information the Chicago police located the car. They contacted Konzak who

informed them that he was securing an arrest warrant for Gibson and requested that they take him into custody. The Chicago police arrested Gibson and transported him to Area Four Robbery Headquarters.

Clark and Konzak arrived a short time later with the warrant. They questioned Gibson who at that time denied any involvement in the robbery. Gibson's father was present and informed the officers that his son had been out with Elton and Odell Houston. Defendant was transported to Chicago Police Headquarters at 11th and State where after further questioning he made an oral inculpatory statement. He later gave a signed written statement. Gibson told police that he met Odell Houston, Elton Houston and Tyrone Hall in front of the Houston home; that all entered his vehicle, and they drove to LaGrange; that they discussed making some money, and on the way he told the others he knew of a place that would be easy to rob; that they went there and parked near the news agency to wait; that Elton Houston remained in the car with him while Hall and Odell Houston entered the place; that both Hall and Odell Houston were armed; that they returned to the car about five minutes later, and that he drove them back to Chicago.

On the basis of this information Elton Houston and Hall were arrested on August 29.* Hall initially denied any involvement in the robbery, but the next morning, after further questioning, he confessed. A few days later Odell Houston was arrested and, after being told that both Hall and Gibson had given statements implicating him, he also confessed. In addition Odell Houston made several phone calls, and shortly thereafter a young woman arrived at the station with a revolver which he stated had been used in the robbery.

OPINION

All three defendants challenge the tactics utilized by the police which resulted in their confessions. We shall discuss their contentions seriatum.
■■ Gibson initially asserts that the subterfuge used by Officer Clark to obtain information from Ms. Gilbert which led to his arrest was unlawful. He argues that therefore his arrest should have been quashed, and his confession should have been suppressed. We believe that since the subterfuge was not directed against Gibson, there is no constitutional basis for his assertion. Simply put, Gibson lacks standing to raise this claim. Our conclusion is grounded on the well-established principle that "[i]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of search or seizure, one against whom the search was directed, as distinguished from one who claims

---

* Elton Houston was a juvenile and not made the subject of a criminal prosecution.

prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Jones v. United States,* 362 U.S. 257, 261; see also *Wong Sun v. United States,* 371 U.S. 471, 492; *People v. Black,* 52 Ill. 2d 544, 553, 288 N.E.2d 376; *People v. Basile,* 21 Ill. App. 3d 273, 276, 315 N.E.2d 293.

■■ Moreover, even if Gibson had standing to raise this issue, we are not persuaded that the police tactics used to gain the information from Ms. Gilbert offended constitutional standards. While courts have frowned upon the wanton use of misrepresentations by police in the course of their investigations, the utility of such tactics in carefully circumscribed situations had been recognized and upheld. (See *People v. Walker,* 30 Ill. 2d 213, 195 N.E.2d 654; *People v. Macias,* 39 Ill. 2d 208, 234 N.E.2d 783.) In the instant case Officer Clark did not hide the fact that he was a police investigator nor did he hide the fact that he was investigating a crime. He merely disguised the nature of the crime which he was investigating. We do not believe that the use of a subtle subterfuge of this nature is so offensive to the Constitution that it requires proscription.

Following his arrest, Gibson underwent extensive interrogation by both LaGrange and Chicago police officers. There is a conflict in the testimony as to the tactics used by the police during the course of these interrogations.

The testimony of LaGrange Police Officers Konzak and Clark for the State regarding the questioning of Gibson was substantially similar. They testified that following his arrest, Gibson was advised of his rights. Gibson's initial interrogation was conducted in the presence of his father. At this time Gibson denied any participation in the crime although he expressed some curiosity as to whether the driver of the getaway car would be considered as culpable as the gunmen. Gibson was transported to police headquarters at 11th and State where he was placed in a cell. Questioning of him continued through the bars of the cell. Konzak told Gibson that the solution to the case lay in merely locating the Houstons and having them identified. At this point Gibson expressed his desire to make a statement. The officers denied physically abusing Gibson.

Gibson testified that at Area Four Robbery Headquarters Officers Konzak and Clark threatened him with small clubs, and Chicago police officers threatened him with nightsticks. He further testified that he was the subject of racial slurs. After he was taken to Chicago Police Headquarters, he was searched, and a handcuff key was found in his pocket. A Chicago police officer hit him over the eye with a nightstick. Defendant displayed a small scar over his eye which he claimed resulted from the blow. However, a photograph of Gibson taken shortly after

he made his statement showed no sign of any wound on his face. Gibson testified that Officer Clark repeatedly promised that if he gave a statement, he would be afforded leniency. Gibson stated that he confessed because he feared the police would injure him.

None of the Chicago police officers who participated in the interrogation of Gibson was called by the State.

Gibson contends that even if his arrest were legal, his confession should have been suppressed because (1) the State failed to call the Chicago police officers present at his interrogation who allegedly threatened and struck him and (2) he was deceived into making his statement by the misleading statements and promises of Officers Konzak and Clark.

■■ Gibson claims that all police officers who were present at his interrogation were material witnesses, and the failure of the State to call them constitutes error. Section 114—11(d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 114—11(d)) states:

> "The burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State. *Objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary must be made in the trial court."* (Emphasis added.)

Thus the statute expressly requires a defendant to object in the trial court if the State fails to call a material witness. Failure of a defendant to object constitutes a waiver of such ground as a contention on appeal. (*In re Lamb,* 21 Ill. App. 3d 827, 316 N.E.2d 42, *aff'd sub nom., In re Lamb,* 61 Ill. 2d 383, 336 N.E.2d 753; *People v. White,* 22 Ill. App. 3d 180, 317 N.E.2d 323.) Only under extraordinary circumstances, where it is necessary to prevent a manifest injustice, will a court of review disregard the express command of section 114—11(d). *Cf. People v. Willis,* 26 Ill. App. 3d 518, 325 N.E.2d 715.

■■ In the instant case Gibson did not object to the State's failure to call as witnesses the Chicago police officers who allegedly threatened and struck him. Moreover, the testimony of Officers Clark and Konzak squarely rebutted Gibson's claim of physical abuse. The court plainly found that no credible evidence had been introduced which in any way substantiated Gibson's claim. In view of these facts we will not ignore the prescriptions of section 114—11(d) and consequently hold that Gibson waived the State's failure to call all material witnesses as a contention for presentation in this court.

■■ Gibson also asserts that since his testimony to the effect that Officers Clark and Konzak employed psychological coercion to induce him to confess was not directly rebutted, the court erred in refusing to

suppress the inculpatory statements he made. There is no merit in this assertion. It is plain that the court found the testimony of the police officers to be more credible than that of Gibson. Their testimony contains no hint of the employment of any technique of interrogation so coercive as to seriously call the voluntariness of Gibson's confession into question. Even if we were to accept Gibson's assertion that his confession resulted, in part, from police promises of leniency, we do not believe that its involuntariness would have been established. In *People v. Gunn*, 15 Ill. App. 3d 1050, 1055, 305 N.E.2d 598, a 17-year-old admitted his participation in the commission of an armed robbery after being urged by investigating police officers to " '* * * make a statement because they got me and that it wouldn't be very hard on me because I wasn't actually the one * * *.' " Mr. Justice Leighton upheld the admission of the defendant's inculpatory statement, noting that the "words of the police officers, as described by defendant, did not constitute coercion." Under the facts and circumstances of this case it is clear that the court did not err in failing to suppress the confession.

Both Hall and Houston have contended that their arrests should be quashed and their confessions suppressed because they resulted from Gibson's "illegal" arrest and confession. Since, as we have held above, the police procedures which led to Gibson's arrest and confession were not violative of his constitutional rights, there is no merit in this contention. Moreover, even if Gibson's rights had been violated, Hall and Houston do not have standing to raise such violations as grounds for suppressing their statements. Standing to raise contentions predicated on the Fourth Amendment lies only in those whose rights have been violated by the search or seizure itself and not by those who are aggrieved solely by the production of damaging evidence. (See *Alderman v. United States*, 394 U.S. 165, 171-172, 22 L. Ed. 2d 176, 185-86, 89 S. Ct. 961; *Basile.*) This principle is illustrated in the holding in the case of *United States v. Bozza*, 365 F.2d 206 (2d Cir. 1966). There the defendant against whom the search was directed moved to suppress the items and failed. Thereafter he pleaded guilty, and his codefendants went to trial. The evidence seized was admitted against them. On appeal the court held that the appellants had no standing to object to the search.

Hall further contends that even if his arrest were proper, his confession was the product of misleading police tactics. Specifically Hall points to Officer Konzak's admission that he misled him by telling him that Elton Houston had made a statement which implicated him in the robbery when, in fact, no such statement had been made.

Courts will invalidate confessions resulting from a subterfuge that is likely to produce an untrustworthy confession. (*People v. Stevens*, 11

Ill. 2d 21, 141 N.E.2d 33.) However, while the use of misrepresentations by police to extract a statement are looked upon with extreme disfavor, such tactics do not necessarily fatally taint a defendant's confession or oral admissions. In *People v. Pritchett*, 23 Ill. App. 3d 368, 319 N.E.2d 101 (abstract opinion), the defendant was arrested by officers of the Rockford Police Department, advised of his rights and questioned concerning a murder and burglary that had occurred at a local church. The defendant was told that his fingerprints had been found at the scene of the crime and on the possessions of the murder victim despite the fact that the police had no such evidence. Believing he had been linked to the crime, the defendant admitted his guilt. On appeal he contended that his confession, which stemmed from the misrepresentations of the police investigators, should have been suppressed. The appellate court rejected this contention. It held that in view of the fact that the defendant had been admonished as to his rights and had not been the subject of any threats or promises, the police misrepresentation concerning the purported recovery of his fingerprints was unlikely to cause an untrustworthy confession and, in addition, such tactics were not "so reprehensible as to invalidate the confession as being offensive to basic notions of fairness. *Frazier v. Cupp* (1969), 394 U.S. 731, 739. See also *People v. Watkins* (1970), 6 Cal. App. 3d 119, 124-125, 85 Cal. Rptr. 621, 624."

■■ In the instant case there can be no doubt that Hall's confession came after a misrepresentation by police of the nature of the evidence against him. However, as was the case in *Pritchett*, Hall had been admonished as to his rights and had not been the subject of physical abuse, threats or promises. In view of these circumstances we cannot say that the trial court erred in failing to suppress his confession.

Finally, Houston contends that he is entitled to resentencing since the trial court erred in enhancing his sentence due to his alleged commission of a criminal act for which he had not been convicted. Houston's presentence investigation report states that he had participated in a jailbreak during the pendency of the case. Defense counsel reminded the court that Houston should be presumed innocent of the charge since he had not been convicted of any crime relating to the alleged escape, and further that consistent with his fifth amendment rights Houston would make no statement regarding the escape charge at the hearing in aggravation and mitigation. Nevertheless, the trial judge stated that he would "consider the fact of the escape from the County Jail" and that he was "going to take it into consideration."

■■■ It is well settled that "[a]rrests or other encounters with the law which have not resulted in convictions are inadmissible at the hearing in aggravation and mitigation in arriving at the punishment for the

crime charged." (*People v. Jackson*, 95 Ill. App. 2d 193, 200, 238 N.E.2d 196.) The record before us clearly demonstrates that the trial court violated this principle. Consequently we vacate Houston's sentence of eight to 24 years and remand the cause as to him so that he may be resentenced.

We affirm the judgments of conviction of all three defendants. We vacate defendant Houston's sentence and remand the cause for further proceedings in accord with this opinion.

Affirmed; vacated in part; remanded in part with directions.

BARRETT and SULLIVAN, JJ., concur.