THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MARVIN W. TANSER, Defendant-Appellee.

Second District   No. 78-30

Opinion filed August 23, 1979.

T. Jordan Gallagher, State's Attorney, of Sycamore (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mary Robinson and John Lanahan, both of State Appellate Defender's Office, of Elgin, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from an order suppressing the defendant's confession. (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a).) In issue is whether the confession was voluntary or, rather, involuntary as the result of inducements of confidentiality by the police, or inadequate *Miranda* warnings.

Defendant was arrested on a charge of arson (Ill. Rev. Stat. 1977, ch. 38, par. 20—1) involving the residence of his neighbor, Francis Palmatier. After a hearing, the court granted the defendant's motion to suppress his confession on the basis of his finding that Tanser had not been adequately informed of and did not understand his constitutional rights before he confessed. The court also found that his confession had been induced by promises that any statement that he made would not be used against him in a criminal proceeding.

At the hearing on the motion to suppress, Donald E. Brown, an arson investigator for the State fire marshall's office, testified that defendant had been pointed out to him by one of the police and fire personnel near the scene of the fire as a possible witness. Brown asked the defendant to come down to the fire station and discuss the fire "because he was a witness." Tanser agreed, and drove his own truck to the fire station. At the station, Brown, the assistant fire chief Leonard Gustafson, and two police officers from the Sandwich police department spoke with the defendant. Brown handed Tanser a form with his *Miranda* rights printed on it. Tanser read the form; Brown said he pronounced the words that Tanser stumbled over and explained the words which were giving Tanser difficulty; and Tanser signed the waiver form. During what was described as an "interview" which was later transcribed and introduced as an exhibit, defendant confessed to setting the fire at the Palmatier residence.

The conversation may be broken into three segments, each lasting approximately 15 minutes. During the first segment Brown, Officers King and Bowman, and Assistant Fire Chief Gustafson were present. During the first segment the defendant, after some preliminary questions, was asked if he had set this fire and answered "No." He was asked about some previous fires and admitted that he had set fires previously. Questions were then asked about fires in his neighborhood and he said he did not have anything to do with those. In the second segment defendant made an admission to Brown alone.

When questioned further about the fire at Palmatier's, the defendant was accused of having changed his story in some details of his activities that night and Brown asked:

"* * * [I]f you've got a problem, this is what were [*sic*] for? I'm not here to nail you or anything like that, I don't want to do it, if you've got a problem, then fine, lets [*sic*] get some help. But there's no way in heck that I'm going to sit here and believe all this when you change your story. * * *

Q. Marvin, don't, do you have a problem.

A. Well, I've got a problem.

Q. Want to talk to us about it?

A. Well, if you and I could talk together.

Q. Fine, would you gentlemen want to step outside for a moment or two? Now you want to talk to me about it Marvin?

A. Well, I've had problems though. * * * I'm an epileptic. I do things, I have these attacks and lots of times I don't know you do it, and I'm really ashamed of myself for doing it but I don't know what to do.

Q. Do you want to discuss these fires with me, that you have said you didn't set these fires.

A. Tonight I just dropped a match in there I don't know why."

Brown then inquired and received answers as to some of the details of setting the fire and the questioning, then returned to other fires in the neighborhood as to which defendant denied guilt. The following interrogation then took place:

"Q. You admitted to a couple of them, if you started then [sic], let's get them all off your chest. There's no sense in keeping any of this back, because there's no, if you had this problem we want to help you with it Marvin, and the only way we can help you with it, is if you tell us about it. We've got to be able to help you with it. Okay.

A. Well, I don't want to go to prison or anything. I know I'm doing wrong but I want help.

Q. Well, this is what we're here to do and that's what I want to do is get you some help."

Brown, with defendant's permission, then called the other three officers back into the room, stating:

"We'll see what we can get done for you. Alright?"

In the final segment, Brown asked defendant whether he should discuss it with the others or whether the defendant would. At this point Gustafson said

"G. Anything you say Marvin we'll hold as confidential, we won't tell anyone.

A. Well, I know Bill won't cause Bill and I have been friends for many years when he was a little boy. I never had no kids and Bill and I were together I taught him a lot of things.

Q. Okay.

G. I think I can vouch for these other two to keep everything confidential. Nobody's out here to [space] anybody or anything like that.

A. Like I told the officer here I've got a problem, a bad problem, and I want to correct it. I, I thought I had it once but it didn't work out.

Q. Okay, Marvin, can we start with the fire tonight and kind of

work back on what you and I discussed. We discussed how you started this fire. Would you tell Bill how you did this one?" Defendant then repeated his admission about the fire that evening as well as two other fires near his home and an additional fire at another place.

Brown testified on cross-examination that the defendant was not told that the conversation was part of a criminal investigation or court proceeding; also, that he had never told defendant that he was in custody nor that he was suspected of arson, although he did tell him that he could stop answering questions at any time. Officer Bowman's testimony was essentially the same as Brown's except that he did not recall Tanser asking for an explanation of words which were giving Tanser difficulty. Gustafson stated that Brown specifically did not explain the difficult words to Tanser.

At the close of the evidence the trial judge stated that he felt that the defendant was not in custody but that the investigation had focused upon him, requiring *Miranda* warnings, which he found to be inadequate. The court further stated that he had more serious concern over the voluntariness of the statement in that it had been induced by promises that it would not be used against him criminally, would be kept confidential and would be revealed solely for the purpose of obtaining psychological help for him. The trial court therefore granted the motion to suppress the confession.

■■ ■ A test of voluntariness has been stated:

"Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. (*People v. Hester*, 39 Ill. 2d 489.) In making its decision the trial court need not be convinced beyond a reasonable doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Lego v. Twomey*, 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619; *People v. Higgins*, 50 Ill. 2d 221; *People v. Johnson*, 44 Ill. 2d 463.)" (*People v. Prim*, 53 Ill. 2d 62, 70 (1972).)

Here, there was no evidence of compulsion in any physical sense and the sole issue is whether defendant was offered an inducement to the extent that his will was overcome at the time he confessed. "Sympathy falsely aroused" may be considered a factor in ruling on the voluntariness of a confession. (*Spano v. New York*, 360 U.S. 315, 329, 3 L. Ed.2d 1265, 1272, 79 S. Ct. 1202, 1207 (1959).) However, this court has held that a statement by a police detective that he would ask for a low bond was not so coercive as to make a statement involuntary. (*People v. Carroll*, 50 Ill. App. 3d 946, 949 (1977).) And in *People v. Eason*, 44 Ill. App. 3d 308, 314

(1976), this court held that a statement by police that the defendant would not talk even if he could "go off scot-free" was held not to be a promise of leniency. And, "a mere suggestion of the advisability of making a statement" is insufficient to render a statement involuntary; but if the evidence, considered in the light most favorable to the defendant, shows that the police officers went further than a mere suggestion to tell the truth and persuaded an accused that if he made a statement he would be treated more leniently, the confession would be suppressed. (*People v. Ruegger*, 32 Ill. App. 3d 765, 771 (1975).) In *Ruegger*, the trial court's finding that the confession was involuntary was affirmed on appeal where there was testimony that the police officers conveyed to the defendant the impression that they would "go to bat" for the accused on such matters as a recognizance bond and probation if he confessed to everything and where there was, in addition, the unusual factor that the defendant was interrogated by a relative. (*People v. Ruegger*, at 771.) A similar promise by a state's attorney that he would not oppose a recognizance bond, which would have allowed the defendant to enroll in a drug rehabilitation program, if defendant "cooperated fully," was found to be an inducement that prompted the confession and a ground for its suppression. *People v. Koesterer*, 44 Ill. App. 3d 468, 480 (1976).

■■ In examining the record in this case, it appears that the defendant was told that he was called in as a witness and not as a suspect. Apparently, however, the questioner had evidence that the defendant had set fires previously and the defendant confirmed a previous incident, which he sought to explain as due to his drinking. It was not until Brown suggested to defendant that if he had a "problem" this is what they were for and were not there to "nail" the defendant but to get him "some help" that defendant would talk about the present crime. Further, it was only after the questioner asked the defendant again whether he had a problem and whether he didn't want to talk about it, the defendant suggested "if you and I could talk together," and the other officers went out of the room, that defendant admitted the details of starting the fire with which he was charged. Throughout the questioning Brown reiterated that if defendant had a "problem" the only way they could help him with it was if he told them about it. When the defendant stated that he did not want to go to prison but wanted help, the questioner again said that they were here to get defendant some help. The trial court could have found under these circumstances that Brown's suggestion that he was only there to get Tanser some help for his "problem" was clearly meant to and did allay Tanser's fear that his confession would be used against him. In the third segment of the statement, William King, a personal friend of the defendant, was called in and the assurances were again given that everything would be confidential.

The trial judge who had the opportunity to observe the witnesses was in a better position than we to weigh the testimony bearing on the voluntariness of the confession. Considering the evidence in the light most favorable to the defendant we cannot upset the trial judge's conclusion that the defendant was induced to confess because of promises of confidentiality and noncriminal treatment made by the questioning officers. We therefore conclude that the trial court's finding that the State had not sustained its burden of showing that defendant's confession was voluntary is not against the manifest weight of the evidence.

In this view we do not consider whether the trial judge properly ruled that the *Miranda* warnings were insufficient.

The judgment is therefore affirmed.

Affirmed.

LINDBERG and WOODWARD, JJ., concur.