THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAIRD NOE, Defendant-Appellant.

Third District   Nos. 79-862, 79-497 cons.

Opinion filed July 30, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

In cause No. 79-497 defendant Jaird Noe was tried without a jury of two counts of indecent liberties with a child, Kelly Jean Foster, and sentenced to two concurrent 15-year terms of imprisonment. After a

second bench trial, he was convicted in cause No. 79-862 of indecent liberties with another child, Sherry Gagnon, and was sentenced to a 15-year term of imprisonment to run consecutively to the sentences in No. 79-497. In this consolidated appeal defendant challenges the voluntariness of certain confessions which were introduced as evidence in the trials.

One hearing was conducted on defendant's motion to suppress the confessions in both cases. Evidence at that hearing and at the subsequent bench trials established that defendant was taken into custody on February 2, 1979, and was questioned about the Sherry Gagnon case by two Peoria police officers. At the beginning of the interview defendant was advised of his *Miranda* rights. He indicated he understood his rights, but wanted to talk to the officers. After discussing the Sherry Gagnon case for about 1½ hours, defendant was taken to the county jail.

Defendant was interviewed by police a second time on February 4, 1979, when he was again advised of his *Miranda* rights at the beginning of the interview, and he again indicated he understood those rights and wanted to talk. The interview lasted 2 hours, during which time defendant gave police a written statement. During this interview Officer Krueger advised defendant that he felt defendant had problem, and the question was how deep it was. Krueger told defendant he would possibly need some help, but in order for the police to make an evaluation of any kind, they had to know everything that defendant had done. On cross-examination, when Krueger was asked exactly what he said to defendant regarding professional help, he replied:

"I said that it was a possibility. It was beyond our area of responsibility or judgment to make any recommendations or anything. But before anybody—and I was referring to the Court or State's Attorney's office—could make any judgment, they would have to know the whole truth about the incident."

At 9 a.m. on February 6, 1979, defendant was taken to the office of Dennis Jenkins, a polygraph examiner. Before any questions were asked, defendant signed a form waiving his *Miranda* rights, and following the 1½ hour examination, defendant was taken to the Peoria Police Department and given lunch. Police first became aware of defendant's involvement in the Kelly Foster case from the results of the polygraph examination.

After defendant ate lunch, he was interviewed by three police officers. At the beginning of this interview, defendant was again advised of his *Miranda* rights, and he again indicated he understood them and wanted to talk. Officer Brown testified that during the course of the interview, which lasted from noon until 2:45 p.m. she told defendant that she felt he needed psychiatric help, and that "it was best that he be honest * * * to possibly get him [such] help." According to Brown, defendant said he would be honest and did want psychiatric help. Brown testified

that she had no intention of getting defendant psychiatric help, and that she had used the same tactic to elicit the truth from other people in similar cases. Officer Layman also mentioned professional help and advised defendant to tell all the details.

At the end of the interview Layman took a written statement from defendant which was subsequently introduced as evidence at the trial in No. 79-497. The statement begins with yet another waiver of *Miranda* rights. In the statement defendant admitted having anal intercourse with Kelly Foster, the 7-year-old daughter of his brother-in-law, three times at defendant's residence in the summer of 1977. After the written statement was taken, defendant was returned to the county jail.

A final interview was conducted the following day. Prior to questioning defendant was again advised of his *Miranda* rights and agreed to waive them. During the course of the interview the police mentioned defendant's need for psychiatric help and encouraged him to discuss what had happened. At 1:30 p.m. Brown took another written statement from defendant which was subsequently introduced as evidence in No. 79-862. The statement, like that taken the day before, began with a waiver of the *Miranda* rights. In this statement defendant admitted having sexual intercourse with Sherry Gagnon, his 3-year-old stepdaughter, at his residence on February 2, 1979.

A stipulation was entered into that Dr. Beck would testify that defendant had an IQ of about 70, and that his achievement level was between the first and second grade level. Several of the police officers who interviewed defendant, however, testified that he did not indicate any difficulty understanding questions they asked or statements they made.

At the suppression hearing defendant testified, *inter alia*, that at the interview on February 2, he was told that he did not have to talk to the police. When asked why he talked to them, he replied that he was afraid his wife might find out about it, or maybe divorce him. At the trial in No. 79-862 defendant was asked why he confessed to having sexual relations with his stepdaughter, and he replied:

"I was afraid I'd lose my wife and I just couldn't take that chance."

In view of our holding in this case, the evidence presented at the bench trials which corroborated defendant's confessions need not be summarized.

■■ The constitutional right of an accused to due process of law is violated by the admission into evidence of a confession not voluntarily made. (*Haynes v. Washington* (1963), 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336.) In determining whether a confession is voluntary, it must be ascertained whether the defendant's will was overborne at the time he confessed or whether the confession was made freely, voluntarily, and

without compulsion or inducement of any sort. (*Haynes*; *People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Such a determination must be made by considering the totality of the attendant circumstances. (*Haynes*; *People v. Walden* (1976), 43 Ill. App. 3d 744, 357 N.E.2d 232.) Consideration should be given to the details of the interrogation and the characteristics of the accused. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) Confessions induced by promises or suggestions of leniency have been held involuntary. (*People v. Heide* (1922), 302 Ill. 624, 135 N.E. 77; *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50.) However, even where promises or suggestions of leniency have been made, the confession is not necessarily inadmissible. The ultimate question is whether, considering the totality of the attendant circumstances, defendant's will was overcome at the time he confessed. (*People v. Hartgraves* (1964), 31 Ill. 2d 375, 381, 202 N.E.2d 33, *cert. denied* (1965), 380 U.S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104; *People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57; *People v. Houston* (1976), 36 Ill. App. 3d 695, 701, 344 N.E.2d 641, 646, *cert. denied sub nom. Gibson v. Illinois* (1977), 429 U.S. 1109, 51 L. Ed. 2d 562, 97 S. Ct. 1143.) Moreover, mere exhortations to tell the truth or to make a statement do not, without more, render a subsequent confession inadmissible. (*Wipfler*; *People v. Jones* (1972), 8 Ill. App. 3d 849, 291 N.E.2d 305.) A confession is admissible if its voluntariness is proved by a preponderance of the evidence, and the finding of the trial court will not be reversed unless it is contrary to the manifest weight of the evidence. *Prim*; *People v. Woodburn* (1979), 75 Ill. App. 3d 532, 393 N.E.2d 1332.

In the instant case the defense argues that the promises or suggestions of psychiatric help made by police officers overcame defendant's will, and that the trial court's determination to the contrary is against the manifest weight of the evidence. We disagree.

Considering the details of the interrogation, we note that before defendant made the statements admitted into evidence, he was advised of his *Miranda* rights on numerous occasions. Although the giving of the *Miranda* warning does not, *ipso facto*, render a subsequent confession admissible (*Jones*), an accused's knowledge of his right to remain silent, his right to counsel, and the consequences of making an admission is part of the totality of the circumstances to be considered. (*Haynes*, 373 U.S. 503, 510-11, 10 L. Ed. 2d 513, 519, 83 S. Ct. 1336, 1341; *Hartgraves*, 31 Ill. 2d 375, 379-80.) Moreover, we do not understand the defense to argue that because of defendant's limited intelligence he was unable to understand the *Miranda* warnings. In any event, sufficient evidence was presented for the trial court to conclude defendant did understand them. Defendant was not physically abused. There is no suggestion that he was

held incommunicado, deprived of food or rest, or subjected to "the third degree." According to the State's witnesses, no definite promises were made, but only vague suggestions of the possibility of psychiatric help. The possibility of leniency, to be distinguished from psychiatric help, was not even suggested.

Considering the character of defendant, we acknowledge his limited intelligence and low level of achievement. While such characteristics might, in the abstract, tend to make an accused's will more easily overcome by suggestions of psychiatric help, it is significant that in the instant case when defendant was asked why he talked to police, he did not mention the suggestions of psychiatric help. He testified he talked to them because he was afraid of losing his wife. The trial court had the opportunity to view defendant on the witness stand to help assess the relationship between his level of intelligence and his decision to confess.

We do not believe the trial court's conclusion that the vague suggestions of psychiatric help did not overcome defendant's will is contrary to the manifest weight of the evidence. Rather, we believe the evidence amply supports the view that defendant, who, although of limited intelligence, understood his *Miranda* rights, freely and voluntarily confessed.

The case of *People v. Tanser* (1979), 75 Ill. App. 3d 482, 394 N.E.2d 616, upon which the defense places great reliance, is readily distinguishable. In *Tanser* the defendant, who had been observed near the scene of a fire, was asked to come to the fire station. When he arrived, he signed a form waiving his *Miranda* rights. He initially denied setting the fire but confessed after the arson investigator told him:

> "I'm not here to nail you or anything like that, I don't want to do it, if you've got a problem, then fine, lets [sic] get some help." (75 Ill. App. 3d 482, 483, 394 N.E.2d 616, 618.)

The defendant repeated his confession to other State officials after he told the investigator he did not want to go to prison, but wanted help, and the investigator assured him that "this is what we're here to do." (75 Ill. App. 3d 482, 484, 394 N.E.2d 616, 618.) Before he repeated his confession, defendant was told it would be kept confidential. The inducements to make a statement in *Tanser*, unlike those in the instant case, carried with them a clear implication of leniency. The defendant was told the police were not out "to nail" him and was assured they were there to help him, not to send him to prison. Furthermore, the trial court in *Tanser* determined the confession to be involuntary, and the issue on appeal was whether such determination was contrary to the manifest weight of the evidence.

We believe *People v. Harris* (1979), 69 Ill. App. 3d 91, 386 N.E.2d 933, is more analogous to the instant case. In *Harris* the defendant was

arrested and taken to the police station. He was advised of his *Miranda* rights, agreed to waive them, and initially denied participating in the armed robbery being investigated. The police changed the subject and began to discuss the defendant's "life style," and his involvement with drugs. The defendant admitted he was a heroin addict, and the police informed him that there were a number of programs available to help him with his drug problem. They told defendant that "the only way this type of a program would ever be effective would be if [he] was willing to turn his life around and take advantage of what was available." (69 Ill. App. 3d 91, 92, 386 N.E.2d 933, 934.) Subsequently, the defendant told the police he realized he had problems, wanted help, and for that reason would tell the truth about the armed robbery. Before he did so, the officers informed him that an armed robbery conviction carried with it a mandatory term in the penitentiary. They erroneously stated that the minimum term was 1 year when, in fact, it was 4 years. The reviewing court, characterizing the defendant as "no stranger to the criminal justice system," affirmed the trial court's conclusion that the confession was freely and voluntarily given. 69 Ill. App. 3d 91, 93, 386 N.E.2d 933, 935.

Finally, we acknowledge that confessions induced by a police subterfuge have been held inadmissible if the subterfuge was likely to produce an untrustworthy confession. (*Houston*, 36 Ill. App. 3d 695, 701, 344 N.E.2d 641, 646-47.) However, the vague suggestions of the possibility of psychiatric help in the instant case were not likely to induce an innocent man to confess to the repugnant crimes involved herein.

For the reasons stated above, the convictions and sentences entered by the Circuit Court of Peoria County are affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.